UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PHILLIP ALPHONSE,
        Plaintiff,

vs.                                          Case No.: 3:21cv1738/MCR/ZCB

CPT TURNER, et al.,
        Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case filed under 42 U.S.C. §
1983.  Plaintiff Phillip Alphonse is an inmate of the Florida Department
of Corrections (FDOC).  His amended complaint names four FDOC
Defendants. (Doc. 16 at 2-3).  Plaintiff asserts Eighth Amendment claims
of excessive force and failure to intervene.  (*Id.* at 8).  Defendants moved
for summary judgment (Doc. 66), and Plaintiff responded in opposition
(Doc. 72).  For the reasons below, Defendants' motion for summary
judgment should be granted.

1

# I.    Factual Background

## A.    Plaintiff's Version of Events

Plaintiff's amended complaint alleges that on November 21, 2020, between approximately 11:28 a.m. and 12:00 p.m., Defendants Manners and Burdett slammed and bent his hand and fingers in the feed box flap affixed to Plaintiff's cell door.  (Doc. 16 at 6).  Plaintiff alleges "he sustained injuries to his right hand . . . wrist[, and] fingers."  (*Id.*).  According to Plaintiff, Defendants' actions were both "malicious" and "sadistic."  (*Id.*).  Plaintiff alleges that during the alleged incident, Defendants Lingo and Turner were present and failed to intervene.  (*Id.*).

Plaintiff has brought Eighth Amendment excessive force claims against Defendants Manners and Burdett.  (*Id.* at 8).  And he has brought Eighth Amendment failure to intervene claims against Defendants Lingo and Turner.  (*Id.*).[1]  Plaintiff seeks punitive and compensatory damages, among other relief.  (*Id.* at 8-9).

---

[1] Although Plaintiff lists "deliberate indifference" in the statement of claims section in his complaint, it is unclear what facts Plaintiff believes support such a claim. (*See* Doc. 16 at 7).  Rather, Plaintiff's allegations—that Defendant officers used excessive force against him when removing

2

## B.    Defendants' Version of Events

Defendants contend that immediately after being escorted from the shower to a close management cell, Plaintiff "attempted to reach out and grab" a non-party correctional officer while the officer "was closing the lid to the handcuff portal." (Doc. 66 at 5). The officer "had difficulty closing the lid due to Plaintiff's [grabbing] attempts." (*Id.*). Defendants allege that with help from the Defendant correctional officers, the non-party officer "was able to apply minor pressure to the lid resulting in Plaintiff relinquishing the portal." (*Id.*). Defendants allege that "Plaintiff's injuries were minor" and did not require treatment. (*Id.* at 5-7). In support of their motion, Defendants have submitted use of force incident reports, medical records, and video evidence.

---

his handcuffs—appear to fall squarely within the realm of an excessive force claim. Because mere regurgitations of the law and legal conclusions are insufficient to plausibly allege a claim for relief, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), Plaintiff's listing of "deliberate indifference" in his complaint, without further factual development, is insufficient to state a claim for relief. *See Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279 (11th Cir. 2017) (holding that "[a] plaintiff must plausibly allege all the elements of the claim for relief. Conclusory allegations and legal conclusions are not sufficient.").

### C.    Video Evidence

Defendants have provided three separate videos. The first is a wide, dorm view that begins at 11:30 a.m. (Doc. 66-1, 11:30:05). Here is what the video shows. Several officers are huddled around a cell door, and an inmate is escorted into his cell (11:30:45). It is impossible to see exactly what is happening in front of Plaintiff's cell because one officer is standing to the right of the officer in the middle—who appears to be the one struggling with Plaintiff's hands and handcuffs—and the officer on the right is blocking the middle officer's hands and arms from the camera's view. The middle officer appears to be pressing down on something, and someone yells (11:32:35). Someone then yells something about a hand (11:33:32). The officer continues to struggle with something (11:34:10), and the yelling gets louder (11:34:12). Officers come and go from the scene, but the middle officer continues to struggle with something (11:40:30). An indiscernible verbal exchange, presumably with Plaintiff, gets louder and continues for several seconds (11:43:24).

An officer then begins filming the front of Plaintiff's cell with a handheld camera[2] (11:44:52).

It appears Plaintiff yells that the officers hurt his hand (11:45:50). The yelling gets louder, and at this point, only one officer remains in front of the cell (11:47:11). Both of the officer's hands are forward and appear to be in contact with the box on the cell front. An officer in a dark jacket approaches the officer filming with the handheld camera, returns to Plaintiff's cell front, and then departs the camera's view (11:48:20). An officer then places a large, standing rectangle in front of the cell door (11:48:50). The officers appear to interact with Plaintiff, but it is difficult to tell what is occurring or to hear what is being said (12:02:59). All the officers, including the cameraman, depart from the camera's view as the video ends (12:03:00).

The second video is of the same camera view, and it picks up at 12:09 p.m. An officer in a dark jacket approaches Plaintiff's cell front, and the officer with the handheld camera takes his previous position,

_____

[2] Footage from this camera is not available due to an uploading error. (Doc. 66 at 5 n.2).

filming into the cell (12:09:51). There is some verbal interaction occurring, but it is difficult to hear exactly what is being said. The officer in the dark jacket exits the camera's view while Plaintiff yells (12:10:39). Plaintiff continues making noise—talking, murmuring, etc.—while the cameraman films him. All officers eventually exit the camera's view (12:15:20).

The third video is of the same camera view, and it picks up at 12:44 p.m., in addition to a simultaneous view of the "backdoor."[3] Officers approach Plaintiff's cell front and move the large rectangular shield out of the way (12:45:20). One of the officers appears to brace against the cell front door (12:46:46). The group of officers at the cell front then leave the camera's view. (12:47:00).[4]

---

[3] It is largely unclear why the "backdoor" view is relevant to Plaintiff's allegations. It merely shows an inmate being escorted by correctional officers through the camera's view pane for about three seconds.

[4] While the video footage continues beyond this point, the Court will refrain from summarizing it here, as it does not depict things relevant to this lawsuit. (*See* Doc. 66 at 8).

## II.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id*.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id*. at 251-52.  When answering that question, courts view the evidence in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  But the nonmoving party bears the burden of coming forward with sufficient evidence on each element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A mere "scintilla" of evidence is insufficient to meet that burden.  *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  Likewise, speculation or

7

conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

When the plaintiff's version of events is "blatantly contradicted" by the record, a court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Thus, when a video recording of an incident clearly contradicts the plaintiff's version of events, the court views the evidence in the light depicted by the video. *Id*. at 380-81.

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477 U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment claims of excessive force and failure to intervene.

### III. Discussion

### A. Plaintiff's Eighth Amendment excessive force claims against Defendants Manners and Burdett.

Plaintiff claims Defendants Manners and Burdett[5] violated the Eighth Amendment by using excessive force against him—namely, slamming his hand, fingers, and wrist into the box on the cell door and bending his hand, fingers, and wrist.  (Doc. 16 at 6).

The "core judicial inquiry" in considering an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319-21 (1986).  "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.

---

[5] It appears Plaintiff may have misidentified at least one of the officers in his allegations (*see* Doc. 66 at 5 n.1), but at this stage, in the interests of judicial efficiency, the Court is analyzing Plaintiff's claims as if the correct officers were identified.

9

To determine whether the application of force was done in good faith or maliciously and sadistically, courts are required to consider four factors:  "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by responsible officials; and (4) any efforts made to temper the severity of the forceful response." *Ledlow v. Givens*, 500 F. App'x 910, 912-13 (11th Cir. 2012).  From the consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.  In cases where a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. *Skrtich v. Thornton*, 280 F.3d. 1295, 1302 (11th Cir. 2002).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Hudson*, 503 U.S. at 7 (cleaned up).

10

The extent of injury may also provide some indication of the amount of force applied.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  As the Court stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  An inmate who has brought an excessive force claim "may avoid summary judgment only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain."  *Ledlow*, 500 F. App'x at 913 (internal quotations omitted).

Applying the factors set forth above, Plaintiff has failed to sufficiently establish that unreasonable force was used in this case.  To be clear, this case is not resolved on the video evidence alone, which shows an obstructed (and therefore disputed) view of Plaintiff's allegations.  Rather, taking the record as a whole, no rational juror could find Defendants acted with the wantonness and maliciousness required for an Eighth Amendment violation.  The Court will now explain why that is so under the factors identified above.

11

Looking first to the need for the application of force, Defendants contend Plaintiff attempted to reach out and grab an officer's hand by reaching through the handcuff flap.   To support their contention, Defendants have submitted Use of Force Incident Reports by the officers involved.  Those reports state that Plaintiff tried to grab an officer's hand before pulling his own hand back into the flap, causing the flap's lid to be inadvertently closed on Plaintiff's hand.  (*See* Doc. 66-3 at 2, 3).  The officer states he then "briefly" applied "minimal downward pressure" on the flap's lid to prevent Plaintiff from continuing to allegedly reach for the officer.  (Doc. 66-3 at 3).  The officer states he then released his hold on the lid and attempted crisis intervention techniques alongside Defendants "in order to persuade [Plaintiff] to relinquish the cuffing portal."  (*Id.*).  The officer states he released his hold on the flap approximately fifteen minutes later, when Plaintiff relinquished the cuffing portal.  (*Id.*).

In response to this statement, Plaintiff has submitted a declaration indicating that he "did not attempt to grab any officers in any fashion" and instead only "tried to get [his] arm safely away from defendants."

(Doc. 72 at 3). Also, in Plaintiff's deposition, Plaintiff denied that he tried to grab the officer who was removing his handcuffs. (*See* Doc. 66-2 at 9). Plaintiff's amended complaint does not address or otherwise indicate that Plaintiff first tried to reach out of the flap and grab an officer's hand before the use of force occurred. The video evidence clearly shows an interaction between Defendants and Plaintiff at the flap box, but it is unclear from the video exactly what transpired. Therefore, whether Plaintiff first tried to reach out and grab an officer is a fact currently in dispute.

Viewing this disputed fact in a light most favorable to Plaintiff, the first factor favors Plaintiff. This is so because if Plaintiff had not reached out and tried to grab one of the officers as Defendants allege, it is possible that the officers could have used less force to remove Plaintiff's handcuffs.

Moving now to the second factor, which is the amount force employed by Defendants. When evaluating this factor, a court should "weigh the prison's security interest in maintaining order against the force used against" the inmate. *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). "[T]he extent of injury is a relevant factor in

determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011); *see also White*, 2016 WL 4787281, at *6 ("While injury and the amount of force are imperfectly correlated, here the indisputably minimal injuries that Plaintiff suffered reveal that Defendant only applied minimal force.").

Here, the force used by Defendants—allegedly slamming Plaintiff's hand, wrist, and fingers into the flap box—was akin to the "push or shove" that does not give rise to an Eighth Amendment claim. *See Wilkins*, 559 U.S. at 38. Indeed, cases involving similar facts have reached that same conclusion. *See, e.g., Curry v. Johnson*, No. 3:16cv483, 2018 WL 7081996, at *6 (N.D. Fla. Sept. 28, 2018) (determining that bending an inmate's fingers and wrist while shoving the inmate's hands into the handcuff box was not the type of force "repugnant to the conscious of mankind" that gives rise to an Eighth Amendment claim); *see also Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511, 513-14 (11th Cir. 2013) (determining that "twisting [the inmate's] arm and pressing him

against the wall," which resulted in "minimal swelling" and no lingering pain or discoloration, did not give rise to an Eighth Amendment claim); *Kelly v. Jones*, No. 5:15-CV-0337, 2017 WL 2676422, at *3 (M.D. Ga. June 21, 2017) (finding no excessive force where officer struck inmate's hand with tray slot flap and injury was minor in nature).  Based on the information in the record, the amount of force used in this case—which only required Plaintiff to receive a band-aid—was on the minimal end of the force continuum.  (*See* Doc. 72 at 5).  Thus, the second factor weighs in Defendants' favor.

The third factor requires consideration of the threat reasonably perceived by prison officials.  Here, Plaintiff was housed in a "closed population" dorm that required "restrictive movement" of inmates.  (Doc. 66-2 at 4).  Plaintiff states he had to be "shackled" and "in handcuffs to come out" of his cell, and officers had to be present.  (*See id*. at 4-5).  Under these circumstances, an inability to remove Plaintiff's handcuffs in a dorm requiring enhanced security could certainly result in a disturbance in operations, and "[i]f the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved"—particularly in

15

dorms that house inmates with "histories of engaging in disruptive behavior." *See White*, 2016 WL 4787281, at *6. Here, especially considering Plaintiff's custody classification in a restricted movement dorm, Defendants used reasonable force to ensure the situation did not escalate. This factor therefore weighs in favor of Defendants.

Looking finally to the efforts made to temper the severity of the use of force, Defendants used a relatively minor amount of force that caused (at most) minimal injuries to Plaintiff.[6] *See Miles v. Jackson*, 757 F. App'x 828, 830 (11th Cir. 2018) (considering the fact that the plaintiff "failed to show that the officers' use of force caused him serious injury" as evidence that the use of force was tempered). Moreover, there are no medical records showing that any medical professional has diagnosed Plaintiff with a hand, wrist, or finger injury. All the Court has is Plaintiff's own conclusory and vague self-diagnosis that his hand, wrist,

---

[6] The post use of force examination revealed that Plaintiff suffered no injuries. Although Plaintiff claims he suffered an injury to his wrist, nothing in the medical records supports that claim. Plaintiff's declaration only admits he was treated with a band-aid. (*See* Doc. 72 at 5).

16

and/or finger(s) were "injured." That self-diagnosis is contradicted by the contemporaneously created medical records, which show that Plaintiff did not have any noticeable injuries requiring medical treatment after the use of force incident. The records show that Plaintiff's hand, wrist, and finger(s) were examined and found to show no signs of serious injury—Plaintiff only suffered "minor superficial abrasions to the top of [the right] hand." (*See* Doc. 66-5 at 3).[7] The nurse determined Plaintiff's abrasions did not warrant any treatment. (*Id.*). His range of motion was normal, and no swelling was detected. (*Id.*). Plaintiff was then examined about an hour later for injuries associated with a separate use of force incident not a part of this case, and it was again noted that with respect to his hand, Plaintiff suffered mere "superficial abrasions." (Doc. 66-5 at 1). Plaintiff's self-serving statements of injury simply "do not create a question of material fact in the face of contradictory, contemporaneously

---

[7] It appears Plaintiff later complained of pain in the fingers of "both" of his hands (Doc. 66-5 at 7), but upon examination, no injuries, swelling, or abnormal skin tone were noted. (Doc. 66-5 at 8). Further, Plaintiff repeatedly indicated that the alleged incident only affected his right hand, not both of his hands. (*See* Doc. 66-2 at 11).

created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010).

Further, it appears the use of force ceased once Plaintiff "let" Defendants "remove the handcuffs." (Doc. 66-2 at 10). *See Collins v. Sheppard*, No. 1:13-cv-31, 2014 WL 5432118, at *7 (M.D. Ga. Oct. 24, 2014) (explaining that "ceasing the use of force once a detainee has been subdued" constitutes an effort made to temper the severity of force). Additionally, shortly after the incident occurred, the record indicates Plaintiff was examined by members of the prison medical staff. (*See* Doc. 66-5 at 3-4). That is something the Eleventh Circuit has considered when evaluating this factor. *See Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (stating that the prison guards' summoning of medical assistance for the inmate "tempered the severity of the forceful response and [made] it less likely that either of them was acting sadistically instead of in good faith") (cleaned up). This factor therefore weighs in favor of Defendants.

Having considered all the factors, the Court finds that no reasonable jury could conclude that Defendants applied force

"maliciously and sadistically to cause harm." *Ledlow*, 500 F. App'x at 912.  What happened in this case is a far cry from the type of egregious conduct that violates "contemporary standards of decency" as required for an Eighth Amendment violation. *See Hudson*, 503 U.S. at 9.  Because the evidence in the record will not "support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.  Defendants, therefore, are entitled to summary judgment on Plaintiff's excessive force claim.

## B. Plaintiff's failure to intervene claims against Defendants Lingo and Turner

Plaintiff asserts Eighth Amendment claims against Defendants Lingo and Turner for their alleged failure to intervene in the use of force by Defendants Manners and Burdett.  (Doc. 16 at 8).

 "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be liable for failing to intervene, so long as he was in a position to intervene yet failed to do so." *Alston v. Swarbrick*, 954 F.3d 1312, 1321 (11th Cir. 2020) (cleaned up).  If the plaintiff fails to establish a

19

constitutional violation with respect to the use of force, then the officers who allegedly failed to intervene to stop the use of force are entitled to summary judgment. *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019); *see also Butler v. Sec'y, Fla. Dep't of Corr.*, No. 20-11097, 2021 WL 4279555, at *4 n.4 (11th Cir. Sept. 21, 2021) (holding that a plaintiff cannot maintain a failure to intervene claim against an officer if the other officer(s) did not use excessive force).

Here, no reasonable jury could find that excessive force was used against Plaintiff as explained above. Plaintiff, therefore, cannot succeed on a failure to intervene claim against Defendants Turner and Lingo. Thus, they are entitled to summary judgment on Plaintiff's claims against them.[8]

## IV.   Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

---

[8] Defendants include a brief argument asserting that they are entitled to qualified immunity in this case. (*See* Doc. 66 at 19-20). Because the Court has found Defendants are entitled to summary judgment on the merits of Plaintiff's claims, the Court will refrain from addressing the qualified immunity argument.

1.     Defendants' motion for summary judgment (Doc. 66) be

**GRANTED**.

2.     The Clerk of Court be directed to enter judgment accordingly

and close this case.

At Pensacola, Florida this 20th day of June 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation. Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

21